# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

**FILED**

**March 29, 2000**

**Cecil Crowson, Jr.
Appellate Court Clerk**

STATE OF TENNESSEE,          )
DEPARTMENT OF CHILDREN'S    )
SERVICES,                    )
                             )
    Petitioner/Appellee,     )
                             )    Appeal No.
VS.                          )    M1999-02606-COA-R3-CV
                             )
SAMIKO MICHELLE HUNTER,      )    Davidson Juvenile
                             )    Nos.  9419-13655
    Respondent/Appellant.    )        9419-13656
                             )
IN THE MATTER OF:            )
LAKEISHA M. HUNTER           )
MICHAEL D. WATERS.           )

## APPEALED FROM THE JUVENILE COURT OF DAVIDSON COUNTY
## AT NASHVILLE, TENNESSEE

## THE HONORABLE BETTY ADAMS GREEN, JUDGE

FOR APPELLEE:                          FOR APPELLANT:

PAUL G. SUMMERS                        THOMAS H. MILLER
Attorney General & Reporter            Franklin, Tennessee

ELIZABETH C. DRIVER
Assistant Attorney General
Nashville, Tennessee

GUARDIAN AD LITEM:
PATRICIA K. MAYES
Nashville, Tennessee

## AFFIRMED AND REMANDED

BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:
KOCH, J.
COTTRELL, J.

# **O P I N I O N**

The juvenile court terminated the parental rights of a mother of two minor children. The mother admitted that grounds for termination had been proven in the trial court by clear and convincing evidence, but argued that it was not in the children's best interests that her rights be terminated. We affirm the trial court.

## **I.**

On January 14, 1997, the Department of Children's Services (DCS) received the first of a series of referrals concerning Ms. Samiko Hunter and her two children, Lakeisha and Michael. The referrals involved failure to meet the children's basic needs, and included among other things, chronic truancy, medical neglect, and lack of food in the house. Apparently, the mother's eight year habit of crack cocaine use was a major factor contributing to the neglect of her children.

On July 16, 1997, DCS filed a petition in the Juvenile Court of Davidson County, asking the court to remove the two children from their home. The petition alleged that they were dependent and neglected, and that Ms. Hunter was threatening to move without leaving a forwarding address, thereby possibly causing the department to lose contact with the children. The court granted an emergency protective order placing temporary custody and care of the children with DCS.

A preliminary hearing was scheduled for July 18, but the parties waived the hearing, and agreed that the children would stay in state custody and

be placed in a foster home together, that the mother would go into a dual treatment program for depression and drug use (Ms. Hunter admitted that she had once attempted to commit suicide by overdosing on crack), that DCS would continue to work with the mother, and that she would continue to visit with the children.

The Department drew up a plan of care with the goal of reuniting the children with their mother. The plan was approved by the court and was signed by Ms. Hunter. Among the obligations of Ms. Hunter under the plan was completion of a drug program and an aftercare plan, random drug screening, counseling with a psychiatrist on a regular basis for her clinical depression, and participation in a parenting program. The plan also obligated Lakeisha's father to pay child support and to visit with his daughter.

After a brief stint in a foster home, custody of the children was granted to a cousin of Ms. Hunter. However, the cousin found that she could not afford the expenses involved in caring for the children, and they went back into foster care. Michael and Lakeisha made progress in a succession of foster homes. Both children have continuing behavioral problems that require great patience on the part of any caregivers, and they were fortunate enough to be placed with individuals that possess such patience. Michael also had a serious case of eczema, which his mother did not treat, but which resolved with proper medical attention.

**II.**

On August 5, 1998, DCS petitioned the court to terminate the parental rights of Ms. Hunter and of Lakeisha's father. The hearing on the petition was conducted on January 12, 1999. Ms. Hunter was ably represented by counsel. The court received testimony from Ms. Hunter, Lakeisha's father, the family's caseworker, several of the foster parents who had cared for the children, and others.

Ms. Hunter admitted that she did not visit with her children for the first seven months after they were placed in State custody. When she did start visiting again, the children were very excited to see her, and very affectionate. Ms. Hunter testified that she wanted very much to be reunited with her children, and she recognized that her drug problems had been a tremendous stumbling block for her.

The record showed that Ms. Hunter successfully completed an 18 day drug treatment program, but did not participate in the continuing care program. While she submitted to drug-screening, the results sometimes indicated continuing use of cocaine. She missed most of her scheduled appointments for psychiatric counseling, and did not enroll in a parenting program, as required by the plan of care. Ms. Hunter stated that she had been able to stay drug-free for as long as three months at a time, but she admitted to using crack two weeks before the hearing. She testified that she had a newly positive attitude, and that she felt that with the help of the pastor of her church she would be able to free

herself from the addiction that had produced such devastating affects on her and her family.

At the conclusion of all the proof, the judge issued a ruling from the bench that she was terminating the parental rights of Ms. Hunter's and of Lakeisha's father, and stated her reasons. A Final Decree of Guardianship was issued on February 1, 1999, which included extensive findings of fact. The trial court further found that it was in the best interest of the children that all parental rights be terminated. This appeal followed.

## III.

The requirements that must be met before the constitutional rights of a parent to the society and companionship of her children may be terminated are set out in Tenn. Code. Ann. § 36-1-113. The pertinent portions of the statute are the following:

> (c) Termination of parental or guardianship rights must be based upon:
>
> (1) A finding by the court by clear and convincing evidence that the grounds for termination or parental or guardianship rights have been established; and
>
> (2) That termination of the parent's or guardian's rights is in the best interests of the child.
>
> ...
>
> (g) Initiation of termination of parental or guardianship rights may be based upon any of the following grounds:
>
> (1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred;
> (2) There has been substantial noncompliance by the parent or guardian with the statement of

responsibilities in a permanency plan or a plan of care pursuant to the provisions of title 37, chapter 2, part 4;

(3)(A) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

(i) The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;

(ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

(iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

Appellant acknowledges on appeal that the State proved by clear and convincing evidence that Ms. Hunter had abandoned the children through her failure to support them, and that she had shown substantial non-compliance with the requirements of the plan of care. The court also found that the children had been removed from their parents for more than six months, that there was little likelihood that the conditions that led to their removal would be remedied at an early date, and that the continuation of the parental relationship diminished their chances of early integration into a stable and permanent home.

While conceding the existence of statutory grounds for termination of her parental rights, Ms. Hunter argues that the State failed to prove that such a termination was in the best interests of the children. Appellant points out that despite her earlier seven month lapse, Ms. Hunter has begun visiting the children

frequently. Appellant also asserts that the testimony proves that Ms. Hunter and the children love each other and that they are bonded as a family, that Ms. Hunter is making progress in her treatment of drug abuse and depression, that she is supported by her therapist, her clergyman and family members, and that "she has confronted her demons and is determined to defeat them."

The trial judge acknowledged some of this in her ruling from the bench:

> "Ms. Hunter, I believe your intentions are good. I believe you love your children very, very much. And I believe that you have nothing but good intentions about leaving crack behind. And I think when you testified and you said that you thought you could do it, I think you believe that. And God only knows, I hope you do."

But the judge also felt compelled to recognize the other side of the coin: that despite having a considerable amount of support from DCS for almost nineteen months, Ms. Hunter had made very little progress towards the goals she had to reach before being reunited with her children; that the children were getting older and that they needed stability in their lives; that being an effective parent involves far more than visiting and telephone contacts.

Tenn. Code. Ann. § 36-1-113(i) sets out some of the factors for the trial court to consider in determining the best interests of the children. These include

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

While the judge's best interest finding also referenced some other factors, we believe Ms. Hunter's failure to make fundamental adjustments in her life makes the termination of her parental rights an inescapable conclusion. In other words, termination of her parental rights has been shown by clear and convincing evidence to be in the best interests of the children. *See In Re: Adoption of E.N.R.*, No. 01A01-9806-CH-00316 (Tenn. Ct. App., filed Sept. 29, 1999 at Nashville). Ms. Hunter was aware of the scheduled hearing on the termination of her rights, yet she used crack just fourteen days before the hearing. Her failure to make significant progress towards freeing herself from her addiction makes further contact with her children a potential danger to them and to any foster parents who take on their care. Continuation of the parental relationship would eliminate any realistic possibility of the children being integrated into a stable and permanent home. It is in their best interest that her parental rights be terminated.

## IV.

The decree of the trial court is affirmed. Remand this cause to the Juvenile Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant, Samiko Michelle Hunter.

_____
BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:


_____
WILLIAM C. KOCH, JR., JUDGE




_____
PATRICIA J. COTTRELL, JUDGE